UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANTUAN LITTLE,

        Plaintiff,

        v.                                            Case No. 21-cv-1188-bhl

ANGELA M. THOMPSON, et al.,

        Defendants.

---

## DECISION AND ORDER

---

In this lawsuit, Plaintiff Antuan Little alleges that Defendants were deliberately indifferent under the Eighth Amendment, and negligent under Wisconsin state law, because they denied his request for a "lower bunk restriction" in February 2019, causing him to fall and chip his tooth at the Redgranite Correctional Institution in May 2020. *See* Dkt. No. 1 & 8. Defendants filed motions for summary judgment on September 16, 2022. Dkt. Nos. 22 & 29. Because no reasonable jury could conclude that Defendants' decision to deny the lower bunk restriction showed deliberate indifference, the Court will grant the motions with respect to the Eighth Amendment claim, relinquish jurisdiction over the supplemental state law claim, and dismiss this case.

## FACTUAL BACKGROUND

Little is a former inmate who was in custody at the Redgranite Correctional Institution at the relevant time. Dkt. No. 24, ¶1. Defendants are Nurse Practitioner Darlene Wilke, Health Services Manager Angela Thompson, Nurse William Borgen, and Program Supervisor Zachary Schroeder. *Id*., ¶¶2-4; *see also* Dkt. No. 31, ¶5. All defendants were members of the institution's Special Needs Committee ("the Committee") that reviewed and rejected Little's request for a lower

bunk restriction in February 2019. Dkt. No. 24, ¶¶20, 23, & 29; *see also* Dkt. No. 31, ¶4. The Committee is a multi-disciplinary body comprised of HSU staff to review medical records, security staff to review security needs, and administrative staff to handle logistics. Dkt. No. 24, ¶13; *see also* Dkt. No. 31, ¶20.

In 2016, Little was diagnosed with Plantar Fasciitis, a painful swelling of the thick fibrous tissue on the bottom of feet. Dkt. No. 24, ¶¶5-6. The plantar fascia covers the bones on the bottom of feet and supports the foot in an arched position. *Id*. According to Little, his condition was particularly painful and made it difficult to stand and walk throughout the day. Dkt. No. 37, ¶38. His feet often became weak, swollen, and stiff and would "give out" without warning. *Id*. Over the years, Little received alternative footwear, physical therapy, injections, custom orthotics, a home exercise program, and pain medication (Naprozen) to treat his condition. Dkt. No. 31, ¶¶9-10. Little received these treatments throughout the incidents giving rise to this lawsuit. *Id*.; *see also* Dkt. No. 37, ¶¶59-60.

The dispute in this case arises from Little's request for a lower bunk restriction submitted January 2019. Just as it sounds, a lower bunk restriction allows an inmate to occupy the lower bunk in a cell (as opposed to the upper bunk in a cell). Dkt. No. 31, ¶27. A lower bunk restriction is coveted at the institution and many inmates request it. Dkt. No. 24, ¶8. But it is not possible to accommodate all requests because there are over 1,000 inmates at the institution and only 560 low bunks available. *Id*., ¶7. Therefore, an inmate must have a qualifying medical need to acquire a lower bunk restriction. Dkt. No. 31, ¶16. Plantar fasciitis in itself is not a qualifying medical need. *Id*., ¶29. But it could qualify if coupled with one or more of the following conditions: significant functional limitation, significant cardiovascular disease, obesity (BMI greater than 40), old age (60 years or older), post-operative status, a seizure diagnosis, pregnancy, or blindness. Dkt. No. 24, ¶31; *see also* Bureau of Health Service Policy and Procedure #300.07. When there is no qualifying medical need, the request is simply considered a comfort. Dkt. No. 31, ¶¶14, 18.

2

On January 2, 2019, Little filed a Health Services Request complaining that he had difficulty climbing the ladder to his upper bunk due to his plantar fasciitis and "bad ankle." *See* Dkt. No. 32-2 at 9. In response, L. Sievert (not a defendant) scheduled Little for a "special needs evaluation" to see if he qualified for a lower bunk restriction. *Id*. Later that month, on January 16, 2019, Little slipped and fell off the ladder to his upper bunk and had to be checked for a concussion. Dkt. No. 37, ¶¶46-47.

About two weeks later, on February 1, 2019, Nurse Russel Johnson (not a defendant) completed Little's special needs evaluation. Dkt. No. 32-2 at 1. Johnson wrote,

> "Pt to HSU for special needs eval for low bunk low tier. Presents with strong, regular gait entering the exam room, wearing new white propets. Pt instructed of purpose for meeting after seated…pt seen by MD 12/4/18, received order for naproxen active until 6/5/19….No visible foot or ankle abnormalities with shoes removed…Pt leaves exam room with exaggerated irregular shuffling gait. Form DOC-3332B completed for review by special needs committee."

*Id*. According to DOC-3332B, Little was able to engage in the following Activities of Daily Living: shower/bathe, dress/groom, use restroom, do personal hygiene, obtain and carry food, eat, do laundry, and clean his room. *Id*. at 7. Little was additionally able to engage in the following Recreational Activities: walking, basketball ("just shooting around"), and weightlifting. *Id*. Little was also able to walk around his unit, walk to off unit-locations (HSU, Rec/gym, and Dayroom), climb the stairs "slowly," and had no difficulty balancing. *Id*. The form noted that Little "just got propets" and "broken ankle 2004, not healed right." *Id*.

On February 6, 2019, the Committee convened to review Little's request for a lower bunk restriction. Dkt. No. 24, ¶37. The Committee's purpose was to first determine whether Little had a qualifying medical need and to second determine whether the security level of the institution, combined with the physical environment of the institution, made the requested restriction feasible. *Id*., ¶¶9-18. The Committee reviewed Johnson's special needs evaluation and determined that Little did not meet the criteria outlined in the policy to receive a lower bunk restriction. *Id*., ¶38.

3

Specifically, Little did not have any significant functional limitations; he did not have cardiovascular disease; he was not obese; he was not postoperative; he did not have a seizure disorder; and he was not blind. *Id.*, ¶39. To the contrary, Little was generally very mobile, had no lower body abnormalities, had the ability to climb stairs, and did not have difficulty balancing. Dkt. No. 31, ¶¶30, 32. Little had also already received custom orthotic shoes in November 2018 to help with his plantar fasciitis. Dkt. No. 24, ¶¶32-35, 40. And the "functional observation" form completed by Sgt. Wilcox (not a defendant) in November 2018 to assess Little's need for custom orthotic shoes had observations virtually identical to those in Nurse Johnson's special needs evaluation from February 2019, *compare* Dkt. No. 25-3 *with* Dkt. No. 32-2 at 7, meaning Little's condition was not deteriorating with time. Because Little did not have any of the qualifying medical conditions as outlined in DOC policy, the Committee denied his request for a lower bunk restriction. Dkt. No. 24, ¶37.

Despite the denial, about a month later, in March 2019, Little was moved to a different cell, where he received the lower bunk. Dkt. No. 37, ¶57. His situation changed on May 27, 2020, however, when he was again moved to a different cell and this time assigned the upper bunk. *Id.*, ¶61. During this time, Little continued to receive medical treatment for his plantar fasciitis, including off-site appointments for injections, use of his specialized shoes, and oral pain medication. *Id.*, ¶¶58-59.

Three days after moving, on May 27, 2020, Little again slipped while climbing the ladder to his upper bunk, causing him to fall and chip his tooth. Dkt. No. 31, ¶37. About a month after that, in June 2020, Little submitted another request for a lower bunk restriction. Dkt. No. 37, ¶64. This time, the Committee granted the request for a one-year period of time beginning July 3, 2020. *Id.*, ¶67; *see also* Dkt. No. 25-4. Shortly after that that grant expired, in July 2021, the Committee reevaluated Little's request for a lower bunk restriction and denied it. Dkt. No. 25-5. But a year

4

after that, in July 2022, the Committee again reviewed Little's request for a lower bunk restriction and approved it for a one year period of time. Dkt. No. 37, ¶¶85-86; *see also* Dkt. No. 25-6.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To survive summary judgment, Little must present evidence from which a reasonable jury could conclude that he suffered from an objectively serious medical condition and that Defendants knew about the condition but disregarded it. *Id.* at 834; *Perez v.*

5

*Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). Little must present specific evidence showing that Defendants knowingly disregarded an objectively serious medical condition. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). It is not enough for Little to show that he disagrees with Defendants' decision, *see Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010), that other medical providers would have reached a different decision, *see Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014), or that Defendants could have made a better decision. *Lee v. Young*, 533 F.3d 505, 511-12 (7th Cir. 2008). Rather, Little must show that Defendants' decision was "so significant a departure from accepted professional standards or practices that it calls into question whether the [provider] actually was exercising his professional judgment." *Pyles*, 771 F.3d at 409.

For purposes of summary judgment, the Court will assume Little's plantar fasciitis presented an objectively serious condition. Thus, the only remaining issue is whether Defendants acted with deliberate indifference when denying his request for a lower bunk restriction.

The undisputed evidence shows that, in evaluating Little's request for a lower bunk restriction, the Committee considered relevant evidence such as the special needs evaluation form from February 2019, Little's medical history (specifically, other forms of medical treatment he was receiving for his plantar fasciitis), and the functional observation form from November 2018. The Committee then reasonably interpreted that evidence by concluding that Little did not have any of the qualifying medical conditions needed for a lower bunk restriction. There is no dispute that Little did not have cardiovascular disease, obesity, old age, post-operative status, a seizure diagnosis, pregnancy, or blindness. With respect to possible "significant functional limitations," the special needs evaluation showed that Little was able to walk around the entire institution, could slowly climb stairs, did not have difficulty balancing, and was regularly exercising (i.e. walking, playing basketball, and weightlifting). Given that Little also already possessed custom orthotic shoes, and his condition had not gotten any worse since he was evaluated for the shoes in November 2018, it was reasonable for the Committee to conclude that Little did not have any

6

significant functional limitations that required a lower bunk restriction. Based on this undisputed evidence, no reasonable jury could conclude that the Committee's decision to deny the lower bunk restriction demonstrated deliberate indifference towards his medical needs. To the contrary, it showed reasoned consideration of the relevant evidence.

In response, Little argues that, although he could "slowly" climb the stairs, he was never tested on whether he could use a ladder. He states that "playing" basketball is different than "just shooting around." And he states that the plan of care for his plantar fasciitis specifically ordered him to "avoid activities that stress the feet" and climbing a ladder to reach the upper bunk is contrary to that order. In other words, Little disagrees with the manner in which Nurse Johnson completed the initial medical evaluation and with the Committee's interpretation of the information in that medical evaluation. But because Nurse Johnson used his medical judgment to conduct the evaluation, and because the medical care providers on the Committee used their medical judgment to interpret that evaluation, Little cannot make out a deliberate indifference claim. His disagreement with the use of medical judgment is inadequate to establish deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Further, the non-medical care providers on the Committee were entitled to reasonably rely on the medical judgment of the medical professionals on the Committee. *See Arnett v. Webster,* 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants…can rely on the expertise of medical personnel.").

Little ends by pointing out that his medical condition has basically remained the same since 2016. He argues that his medical condition was considered a "significant functional limitation" adequate for a lower bunk restriction in some years while it was not in other years. Little appears to imply that the Committee arbitrarily grants or denies restrictions from year to year and therefore does not actually exercise any reasoned judgment. But, as Defendants have explained, the Committee is a multi-disciplinary body tasked with analyzing all of the conflicting needs of an institution to arrive at a decision that is safe and acceptable for everyone. The Committee looks

7

not only at one inmate's individual medical needs but also at the needs of other inmates, the institution's security needs, and the institution's physical capacity limitations. In other words, it may be that there were other inmates at the institution in a particular year—for example more blind inmates or more obese inmates—who needed a lower bunk restriction more than Little did because their medical condition could not be accommodated with alternative treatment the way Little's could. But the difference in treatment from year to year does not mean that the Committee analyzed Little's request with deliberate indifference in the years he did not receive a lower bunk restriction. Indeed, the undisputed evidence shows that the Committee considered relevant evidence and arrived at a reasonable decision.

Based on the record, no reasonable jury could conclude that Defendants acted with deliberate indifference in denying Little's request for a lower bunk restriction; therefore, they are entitled to summary judgment on the Eighth Amendment claim. Given that Defendants are entitled to summary judgment on the Eighth Amendment claim, the Court will relinquish jurisdiction over his supplemental state law claims. *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) (noting that "when the federal claim in a case drops out before trial," a district court usually "relinquish[es] jurisdiction over any supplemental claim to the state courts."). The Court will dismiss the case.

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 22 & 29) are **GRANTED;** and this case is **DISMISSED**. The Clerk's office is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on June 26, 2023.

s/ *Brett H. Ludwig*<br>
BRETT H. LUDWIG<br>
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.